ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Anthony Stouffer, | : | |
|     Plaintiff | : | Civil Action |
| | : | |
| v. | : | No. |
| | : | **1: CV-07-1587** |
| RestoreCore Management, Inc. t/b/d/a | : | |
| RestoreCore Central PA. and | : | JURY TRIAL DEMANDED |
| Michael Goldberg, | : | |
|     Defendants | : | |

FILED
HARRISBURG

AUG 29 2007

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

**COMPLAINT**

**PARTIES**

1. Plaintiff Joseph Anthony Stouffer (hereinafter, "Stouffer") is an adult individual residing at 523 Warren Street, Lemoyne, Pennsylvania 17043.

2. Defendant RestoreCore Management, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered address at 3822 Burton Lane, Harrisburg, Pennsylvania 17110.

3. RestoreCore Central PA is a fictitious name under which RestoreCore Management, Inc. conducts business in Central Pennsylvania. Its office in Central Pennsylvania is located at 2322 North Seventh Street, Harrisburg, Pennsylvania 17110 (hereinafter, collectively referred to as "RestoreCore"). RestoreCore is in the business of fire and water restoration following catastrophic events. The Harrisburg office serves as RestoreCore's principal office.

4. Defendant Michael Goldberg is an adult individual who, upon information and belief, resides at 3822 Burton Lane, Harrisburg, Pennsylvania 17110. At all times during the events giving

1

rise to this cause of action, Goldberg was owner and President of ResoreCore, with the Company serving as his alter ego.

## JURISDICTION and VENUE

5. Jurisdiction is predicated upon 28 U.S.C.§1331, involving a federal question, inasmuch as all federal claims are predicated upon the Fair Labor Standards Act, 29 U.S.C.§201, et seq. Specifically, a right of private action is authorized, and Plaintiff is proceeding, pursuant to 29 U.S.C.§216(b) of the Act.

6. Supplemental jurisdiction over state law claims is also asserted in accordance with 28 U.S.C.§1367(a) under the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.§§260.1-260.12, as well as a common law breach of contract implied in fact.

7. Venue is proper in the Middle District of Pennsylvania in that all parties reside there, as well as the fact that the actions giving rise to this Complaint occurred at RestoreCore's Harrisburg office.

## BACKGROUND

8. On November 14, 2005, Stouffer was hired by RestoreCore as Material/Purchasing Coordinator at a salary of $42,000 annually. At the time of his hiring, he was asked to sign a non-compete agreement.

9. Stouffer's job duties were to include, inter alia, obtaining vendors following a disaster from an approved supply list; delivering these supplies to the job site; coordinating with project managers in reconstruction activities after a loss; and, with regard to water losses, receiving calls from the Call Center with the message, "please respond," after which he would dispatch a crew and sometimes personally go out on calls. He was to report to General Manager John Hartman and to be on call every Wednesday evening and serve as additional backup for weekends.

10. Typically, however, from the date of his hiring through November 13, 2006, at which point purchasing duties were removed from him, despite his job title, Stouffer was rarely in the office; instead, he would retrieve construction materials from a variety of locations, such as Home Depot; Lowe's; and other entities supplying the construction industry. Indeed, he would purchase the materials on behalf of RestoreCore; load them in a Company vehicle; and personally deliver them to job sites or to a warehouse for staging, where he would unload the materials himself. In one instance, he made twenty-eight (28) material pickup and deliveries for a specific job. In practice, Stouffer functioned as little more than a runner/delivery driver for Home Depot, Lowe's and other suppliers of construction materials from whom RestoreCore was purchasing supplies.

11. Stouffer was relegated to performing such menial job duties because the Project Managers in charge of restoration activities, who were to furnish a list of materials in time for Stouffer to conduct his purchasing function, routinely informed Stouffer of their requirements "at the eleventh hour," leaving him no time to "coordinate" purchasing and no choice but to do his best to even find the construction materials, which he now had to pick up and deliver himself.

12. As a consequence of the inefficiency of the Project Managers, Stouffer logged considerable overtime hours in receiving and delivering construction materials himself.

13. At one point he took this matter up with President and owner, Michael Goldberg, telling him, "[y]ou're wearing me out – I'm doing everything at the last minute." As a result, Stouffer logged overtime hours, not because he was the Purchasing Coordinator, but as a consequence of becoming a "runner" necessitated by the "last minute" nature of the demands being placed upon him.

14. Stouffer attempted to alleviate the problem by demanding that all supply lists be put in writing and developing a Request Sheet for Materials.

15. On or about November 13, 2006, RestoreCore's Vice President of Operations, Dwayne Smoker, informed Stouffer that since no other facility within the Company had a Purchasing

3

Coordinator, he was being transferred to the position of Water Technician. Within a period of twenty-four hours, all purchasing duties had been removed from Stouffer's job responsibilities.

16. Sometime near the end of October, 2006, Smoker had originally approached Stouffer about wanting to dissolve the Purchasing Coordinator position and had scheduled a meeting with General Manager Matt Tenney, Stouffer and himself. Stouffer was given until the end of the month to let them know how he felt about working with the emergency crews as a water technician.

17. Stouffer informed Smoker and Tenney from the outset that he was opposed to the idea. Nevertheless, Smoker attempted to coax Stouffer into the water tech position, saying that it was for Stouffer's own good: "[a] few months in each department and you'll be promoted to Project Manager," said Smoker.

18. Knowing the overtime hours which the Emergency Department worked, Stouffer began to inquire about compensation for overtime. Smoker said that he would "check into it and get back to him." When he failed to do so, Stouffer went to Matt Tenney who also said that he would "check into it." He failed to do so, as well.

19. From November 13, 2006, when he was moved into Emergency Services as a water technician, through the third week of February, 2007, Stouffer continued to inquire about overtime.

20. On the same day as Stouffer's demotion, RestoreCore hired Brian DeStefano as Production Coordinator at a salary $10,000 more than Stouffer was paid. Nevertheless, Stouffer was expected to aid in the transition to this new manager. DeStefano was to supervise the Emergency Services Department by coordinating the activities of the Technicians.

21. At some point after the DeStefano hire, Stouffer confronted Vice President of Operations Smoker, wanting to know "where am I?" Smoker had repeatedly informed Stouffer that he was on a career path to become a Project Manager on the Restoration side of the business.

Stouffer told Smoker, "I want compensated $52,000 [salary DeStefano was being paid] or equal salary or I want my overtime" or, if not, two weeks of PTO [paid time off] time.

22. Despite promising to do so, Vice President of Operations Smoker never got back to Stouffer with a response from Company management.

23. On various occasions in the succeeding weeks and months, and intensifying during the month of February, 2007, Stouffer spoke with Smoker or General Manager, Matt Tenney, informing them that he was working up to twenty (20) hours overtime each week, and demanding that this overtime be paid or, in lieu, that he be given a salary of $52,000. The only additional compensation he received was a small salary boost to $43,000 in January, 2007.

24. In the meantime, Stouffer performed the duties of a Technician, again logging significant amounts of overtime. His new job duties included, inter alia, being on call, twenty-four (24) hours each day, seven (7) days a week; receiving emergency calls and dispatching crews, ultimately going himself on calls with another Technician; meeting the crew at the Harrisburg warehouse and traveling in a company vehicle loaded with supplies to a job-site, where he would confer with an insured and have them sign initial paperwork; unload the drying equipment and physically work the equipment, drying out any water damage.

25. Stouffer's name appeared on the RestoreCore Table of Organization as one of six Technicians. Each of the Technicians – other than Stouffer – received overtime pay. Indeed, RestoreCore published its policy on this matter at page 21 of their Employee Handbook, which stated, "[w]hile performing emergency services, the on-call technician will be paid time and a half their base wage rate when called out after work hours, ... For purposes of this policy, on-call time periods include the hours between 4 p.m. and 7 a.m. Monday through Friday and all day Saturday and Sunday. Overtime will be paid to the on-call technician for "on-call" hours worked regardless of the number of hours of regular hours worked during that week (when specifically called out on an

emergency call). ... In addition to any on-call overtime pay, each on-call technician will receive a $30 bonus for the weekend they are scheduled to be on call. ..."

26.  Stouffer was deprived of all compensation he was entitled to under the terms of this RestoreCore policy.

27.  In February, 2007, a corporate decision was made to send Brian DeStefano to a job site in Reading where a major fire loss had occurred. Vice President of Operations Smoker informed Stouffer at the time that he would be "filling in" for DeStefano during his absence.

28.  From this date through mid-March, 2007, Stouffer repeatedly asked General Manager Matt Tenney for compensation for overtime hours in that such hours had escalated as a result of DeStefano's transfer to the Reading job site and Stouffer being mandated to "fill-in" for him.

29.  On March 19, 2007, a meeting was held at RestoreCore's Harrisburg office in which it was announced that a Project Manager, Dave Souder, would be training for a position as General Manager, and that he would be given the title, "acting" General Manager in the interim and that he would head the Emergency Services Department supervising the Water Technicians.

30.  Souder had let it be known that after his ascension to these new duties, overtime hours for Technicians would escalate. He also had stated that Stouffer would be nothing more than a Water Technician.

31.  Stouffer left after the meeting and went home. That evening, he telephoned Michael Goldberg, RestoreCore owner and President, to tell him that he "needed a break" and that he wished to take some PTO time. Goldberg said that was okay, but he needed to call the current General Manager, Matt Tenney. Stouffer complied with this request.

32.  On March 20, 2007, after having repeatedly requested overtime pay to no avail, Stouffer telephoned the Bureau of Labor Law Compliance in the Pennsylvania Department of Labor and

Industry and spoke with the Manager, Brian Smolock. The following day – March 21, 2007 – Stouffer's Wage Complaint was formally filed and docketed at No. 2007-01362.

33. Five days later, Stouffer's employment with RestoreCore was terminated by General Manager, Matt Tenney. Prior to terminating his employment, Tenney stated to Stouffer: "[y]ou have no chance here. They are setting you up to fail. You're going nowhere here." Tenney, the General Manager of RestoreCore, with both actual and apparent authority to bind the Company, promised Stouffer that his [Stouffer's] non-compete covenant would not be enforced against him and that he would remove it from Stouffer's personnel file.

34. On this same date, Stouffer telephoned Mary Jane Dwyer at Professional Solutions, RestoreCore's Human Resource Consultant, and stated that he had been wrongfully terminated; that he wanted his personnel file to determine if there truly was a non-compete agreement in it; that, if so, he wanted it removed and destroyed; and, because of RestoreCore's history of refusing to pay accrued PTO time, he wanted confirmation that in his case it would be paid. Dwyer responded: "[w]hat would you like me to do about it, Mr. Stouffer? I can't help you. I would have to call Mr. Goldberg and verify the information you told me and then get back to you."

35. Neither Dwyer, nor anyone else at Professional Solutions, ever got back to Stouffer.

36. As of his final paycheck, Stouffer had 69.58 hours of accumulated PTO time to which he was entitled. He has never been compensated for this PTO balance.

37. Upon being informed of the Wage Claim lodged against it by Stouffer, RestoreCore's Comptroller, Joseph Snavely, on May 29, 2007, wrote to the State Bureau of Labor Law Compliance, stating in part: "... During his tenure, Mr. Stouffer functioned as our Purchasing Agent. In this position, a significant amount of his work was the performance of office duties, which included making purchasing agreements and commitments of high dollar value to the Company. These decisions were made independently and based on his personal judgment. More recently, Mr.

7

Stouffer had expressed his interest in becoming a Project Manager. To this end, he was participating in on the job training in the field to learn the details of this position. As evidence of our commitment to the goal of Project Manager, we had recently sent Mr. Stouffer to a training course in Orlando. Mr. Stouffer continued to perform his duties as a purchasing agent during this time. Additionally, Mr. Stouffer was aiding in the supervision of four technicians on a daily basis."

38. During the course of the Bureau of Labor Law's consideration of this matter, it saw fit to request the source documentation or payroll records for this period of time for Mr. Stouffer. Comptroller Snavely informed them that such records did not exist. In fact, they did exist and Snavely's representation was false and made in bad faith.

39. During the course of the events which have been described above, RestoreCore owner and President, Michael Goldberg, was aware of his Company's failure to reimburse Stouffer for overtime hours and its refusal to pay him his PTO time. As evidenced by Mary Jane Dwyer's comment to Stouffer, Goldberg was involved in virtually every decision made at RestoreCore. He specifically ratified the illegal actions taken by his Company.

COUNT I – VIOLATION OF OVERTIME PROVISIONS OF FAIR LABOR STANDARDS ACT

40. Paragraphs 1-4 and 8-39 are incorporated by reference as if fully set forth in their entirety.

41. The Fair Labor Standards Act, 29 U.S.C.§207(a)(1), provides that no employer shall employ any of his employees who in any workweek works more than forty (40) hours unless the employee receives compensation for the hours in excess of forty at the rate of one and one-half times his or her regular rate.

42. Stouffer did, in fact, work more than forty hours each week and accumulated overtime hours for the months in 2006 and 2007, as follows: a) January, 2006 – 24.5; b) February, 2006 – 10.0; c) March, 2006 – 13.5; d) April, 2006 – 4.0; e) May, 2006 – 7.5; f) June, 2006 – 29.5; g) July,

8

2006 – 10.5; h) August, 2006 – 14.5; i) September, 2006 – 12.0; k) October, 2006 – 10.0; l) November, 2006 – 11.0; m) December, 2006 – 15.25; n) January, 2007 – 24.0; o) February, 2007 – 47.0; and p) March, 2007 – 34.0.

43. RestoreCore refused to compensate Stouffer for the overtime hours set forth in paragraph 42 above.

44. None of the exemptions delineated at 29 U.S.C.§213 apply to the actual duties Stouffer performed for RestoreCore as described in some detail above.

45. Stouffer worked 162.5 hours overtime in calendar year 2006. Since his annual salary was $42,000, his hourly rate was $20.19. Consequently, he was deprived of $4,920.50 in overtime compensation during 2006. In calendar year 2007, Stouffer worked 103 overtime hours. Since his annual salary was $43,000, his hourly rate was $20.67. Accordingly, he was deprived of $3,193.00 in overtime compensation in calendar year 2007.

46. As detailed at paragraphs 42-43 and 45 above, Stouffer was deprived of a total of $8,113.50 in overtime compensation. Since the provisions found at 29 U.S.C.§216(b) allow for an equal amount to be assessed as liquidated damages, Stouffer is entitled to damages in the amount of $16,227.00 for RestoreCore's willful failure to pay him the overtime compensation he was due. Stouffer is also entitled to an award of attorney's fees and costs, pursuant to 29 U.S.C. §216(b).

## COUNT II - RETALIATION

47. Paragraphs 1-4 and 8-39 are incorporated by reference, as if fully set forth in their entirety.

48. As described above, Stouffer engaged in protected activity by filing a Wage Claim with the Pennsylvania Department of Labor and Industry, Bureau of Labor Law Compliance.

49.     Five days after engaging in protected activity, Stouffer's employment was terminated by RestoreCore. The General Manager who terminated his employment, Matt Tenney, was candid in telling Stouffer that "you're going nowhere here."

50.     As a result of requesting the overtime compensation he was legally due, Stouffer's employment was terminated. This action was in direct retaliation for having engaged in protected activity.

51.     Moreover, despite being told by RestoreCore General Manager Tenney that his non-compete agreement would not be enforced against him, that Company has sought to utilize the agreement in an effort to deprive him of his present employment. This action is in direct retaliation for having engaged in protected activity. Others with non-compete agreements in similar circumstances who have not engaged in protected activity have not had them enforced by RestoreCore.

52.     As detailed at 29 U.S.C.§216(b), the measure of damages to be awarded for retaliation such as engaged in by RestoreCore is the payment of wages lost and an equal amount as liquidated damages. Since Stouffer's annual salary at the time of his termination was $43,000, such damages are continuing from March 26, 2007 at a rate of twice wages lost until such time as judgment may be entered. In accordance with 29 U.S.C.§216(b), Stouffer is also entitled to an award of attorney fees and costs.

53.     Defendant Michael Goldberg was aware of the retaliatory actions being taken against Stouffer and specifically ratified them.

COUNT III – VIOLATION OF PENNSYLVANIA'S WAGE PAYMENT AND COLLECTION LAW

54.     Stouffer requests that this Court exercise supplemental jurisdiction over the state law claims which are directly related to the federal claims in this case.

55.	Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.§§ 260.1-260.12, provides its own remedies for the illegal actions of RestoreCore. A private right of action is authorized in any court of competent jurisdiction (43 Pa.C.S.§260.9a(b)). In addition to the remedies provided by the Fair Labor Standards Act, Pennsylvania's Act has its own liquidated damages, i.e., 25% of total wages due or $500, whichever is less. In addition, a 10% penalty for that portion of any claim found justly to be due may be assessed in cases where the dispute is not in good faith. 43 Pa. C.S.§260.9a(c).

56.	As detailed above, RestoreCore 's failure to pay overtime compensation to Stouffer was not in good faith. Comptroller Snavely's response to the Bureau of Labor Law Compliance was disingenuous in that, a) it suggested that Stouffer continued to perform purchasing duties (after November 13, 2006) when, in fact, he did not; b) it failed to acknowledge that Stouffer – at least since November, 2006 – was a Technician and did not perform the duties which Snavely represented; c) it omitted to inform the Department of Labor and Industry that RestoreCore had a policy to pay overtime to employees in Stouffer's category (Technician); and d) it made no mention of the PTO time for which Stouffer was claiming. Moreover, when the Bureau asked for source documents, Snavely denied that they existed when, in fact, they did.

57.	In addition to the amounts of overtime detailed above for which Stouffer was entitled ($8,113.50), he was also due his PTO time (69.58 hours @$20.67/hr., or $1,438.21), for a total of $9,551.71 (excluding all liquidated damages under the Fair Labor Standards Act). Adding $500.00 in liquidated damages under state law, plus the 10% penalty for a dispute not in good faith ($955.17), Stouffer is entitled to an additional $2,893.38 under the provisions of Pennsylvania's Wage Payment and Collection Law.

### COUNT IV – BREACH OF CONTRACT IMPLIED IN FACT

58.	Paragraphs 1-4 and 8-39 are incorporated by reference as if fully set forth in their entirety.

59.     RestoreCore's policy on payment of overtime to Technicians on call, as expressed in their Handbook, amounted to a contract implied in fact.

60.     In all cases except that of Stouffer, Technicians were paid their overtime in accordance with the policy as delineated on page 21 of the RestoreCore Employee Handbook.

61.     In Stouffer's case, he was also deprived of $60.00 for being on call for two weekends in March, 2007, in accordance with RestoreCore's own policy.

62.     RestoreCore's failure to pay Stouffer for his overtime hours as a Water Technician was willful and specifically ratified by Defendant Michael Goldberg. It represented a breach of an implied contract in fact under Pennsylvania common law.

WHEREFORE, it is requested that judgment be entered against Defendants RestoreCore and Michael Goldberg and in favor of Plaintiff Joseph Anthony Stouffer in the amounts as follows: Count I – (violation of FLSA overtime provisions, plus liquidated damages) $16,227.00; Count II – (violation of FLSA's retaliation provisions, including liquidated damages) - $43,000.00 x 2 calculated on annual basis and pro-rated until judgment entered; Count III - $2,893.38 (PTO time plus penalty provisions under Pennsylvania's Wage Payment and Collection Law); and Count IV - $60.00 – on-call for two weekends pursuant to RestoreCore's own policy. Stouffer is also entitled to an award of attorney's fees and costs, pursuant to 29 U.S.C.§216(b).

Respectfully submitted,

*John M. Kerr* [signature]

John M. Kerr, Esquire
Attorney I.D. # 26414
5000 Ritter Road
Suite 202
Mechanicsburg, PA 17055
(717) 766-4008

Attorney for Joseph Anthony Stouffer

Dated: August 29, 2007